IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 11, 2018 Session

## DELINQUENT TAXPAYERS AS SHOWN ON THE 2011 REAL PROPERTY TAX RECORDS OF THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, ET AL. v. THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, ET AL.

Appeal from the Chancery Court for Davidson County
No. 13299II          Carol L. McCoy, Chancellor
_____

No. M2015-02450-COA-R3-CV
_____

A landowner's real property was sold at a delinquent tax sale on August 14, 2013. The taxpayer subsequently conveyed her interest in the property to a third party that redeemed the property within the one-year redemption period. In the interim, new legislation took effect that altered the redemption process. The purchaser at the tax sale and two creditors of the taxpayer moved the court to set aside the redemption, contending that the redeeming party failed to comply with the new law. The trial court held that the redemption procedure set forth in the new legislation applied, that the redeeming party did not follow the redemption process set forth in the new legislation, and thus, that the redemption failed. The redeeming party appeals. We hold that the trial court correctly determined that the redeeming party was entitled to redeem but erred in concluding that the new statute applied to this redemption and that the redemption failed due to the redeeming party's failure to follow the new redemption process; accordingly, we affirm in part and reverse in part the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Charles Walker, Nashville, Tennessee, for the appellant, REO Holdings, LLC.

David P. Cañas, Franklin, Tennessee; Peter C. Robison, Charles G. Cornelius, and L. Braxton Felts, Jr., Nashville, Tennessee, for the appellees, Unique Real Estate Investments, LLC; Co-Conservators of Sepal I. Mooneyham, Gary L. Mueller, and Carolyn R. Mueller; and Woodhaven Condominium Association, Inc.

J. Brooks Fox, Jason Paul Bobo, Margaret Overton Darby, Nashville, Tennessee, for Metropolitan Government of Nashville & Davidson County.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

Collette Mooneyham Freeman owned a condominium located at 3911 Dodson Chapel Road, Unit 6, in Hermitage. Due to her failure to pay property taxes, the property was sold at public auction by the Clerk and Master of the Davidson County Chancery Court on August 14, 2013. The highest bidder at the sale was Unique Real Estate Investments ("UREI"), which purchased the property, subject to the right of redemption, for $66,000.00. A Final Decree Confirming Sale was entered on September 26, 2013.

On August 18, 2014, Gary Mueller and Carolyn Mueller, filed a "Petition to Apply Balance of Proceeds of Sale in Satisfaction of Property Taxes to Conservators' Liens and Judgments Versus Collette Mooneyham Freeman." Ms. Mueller is the sister of Ms. Freeman and, along with her husband, Gary ("Co-Conservators"), has served as conservator of Ms. Mueller's mother, Sepal Mooneyham, since 2009. In that capacity, between 2010 and 2014, the Muellers obtained five judgments against Ms. Freeman. Ms. Freeman also executed a deed of trust for the property to secure payment of a note to the Co-Conservators. The judgments and the deed of trust were all duly recorded. The petition alleged that the amount of the judgments and loan, with interest, exceeded $40,000.

On September 2, 2014, REO Holdings, LLC ("REO") paid $12,032.21 to redeem the property and paid $6,856.11 in interest into the office of the Clerk and Master. That same day, the Clerk and Master issued a letter to REO's attorney, stating that it "has processed payment to begin the redemption process" and that "T.C.A. 67-5-2701 requires that a redeeming party hold an equitable or legal interest in property to be eligible to redeem it." The letter then asked the recipient to confirm the name of the redeeming party, asked for a preferred mailing address, and asked the recipient to "attach evidence that the redeeming party has a valid interest in redeeming this property." The following day, the Clerk and Master Office sent UREI notice of REO's redemption.

On September 26, 2014, the Woodhaven Condominium Association ("WCA") filed a Motion for Payment from Excess Tax-Sale Proceeds. The motion alleged that the Association was an interested party at the time of the tax sale, that Association dues and

assessments accrued against the property and remained unpaid, and that the Association had filed a lien against the property. WCA sought payment from the excess proceeds of the tax sale in the amount of $5,440.68 plus attorney's fees and additional HOA fees.

On October 1, 2014, UREI filed an Objection to Redemption and Claim, asserting that REO was not entitled to redeem the property because REO had not filed a motion establishing its right to redeem the parcel, had not paid the entire amount owing due to interest being "calculated based on the former statutory scheme," and that REO did not have an equitable or legal interest in the property at both the time of the sale and the time of redemption as required under the 2014 amendments to the redemption statute. The motion also contained an alternate claim for reimbursement of various fees, costs, and interest, totaling $32,867.94, plus attorney's fees and costs, in the event the redemption was proven valid. That same day, the Co-Conservators filed a "Motion to Dismiss Attempted Redemption of Real Estate by REO Holdings, LLC and Motion for Default Judgment on Petition filed August 18, 2014." On October 9, WCA filed a motion to dismiss the attempted redemption by REO for the same reasons as the pleadings filed by UREI and the Co-Conservators.

REO responded to these motions, arguing that, due to the Quitclaim Deed it received from Ms. Freeman on August 29, 2014, it was an interested party under the version of Tennessee Code Annotated 67-5-2701 in effect at the time of the tax sale on August 13, 2013, and that it exercised the right of redemption within one year of the date the order of confirmation of sale was entered. REO also disputed the amount of reimbursement sought by UREI, on the basis that the expenses incurred were for "improvements or other expenses not authorized by law."

UREI, the Co-Conservators, and WCA replied to REO's response, asserting that REO incorrectly relied on a prior version of Tennessee Code Annotated section 67-5-2701, which had been superseded by the enactment of Public Acts 2014, Chapter 883, Sections 17 and 18, effective July 1, 2014. The Co-Conservators' reply also noted that REO had not filed a motion to redeem, as required by section 67-5-2701(b) (2014).

Following a hearing by the Clerk and Master, the Co-Conservators, alleging that the signature on the Quitclaim Deed was not that of Ms. Freeman, amended their motion to dismiss and for default judgment to argue that "the attempted redemption of the property in this matter is invalid based on the fraudulent Quitclaim Deed relied on by REO Holdings, LLC." UREI filed a similar motion, asking the trial court to hear additional proof. REO responded to the Co-Conservators' amended motion, requesting that the court strike any pleadings filed by the Co-Conservators on the grounds that they did not have standing to file any pleadings or request relief from the court. The Court heard the motion on October 15, 2015; Dr. Mueller and Ms. Freeman testified.

3

By order entered December 2, 2015, the court concluded that Ms. Freeman's signature on the quitclaim deed was authentic, that the 2014 version of the statute applied, and that REO's attempted redemption of the property failed, holding:

> REO Holdings failed to file a "motion" to attempt to redeem the Property but instead filed a Notice of Redemption Process on September 3, 2014. REO Holdings' Notice of Redemption Process failed to contain the mandatory information outlined in section 67-5-2701(b), including "specific allegations establishing the right of the person to redeem the parcel." REO Holdings failed to comply with the mandatory requirements contained in Tenn. Code Ann. section 67-5-2701(b) (2014), and its attempted redemption of the property fails.

Accordingly, the court granted UREI's objection and the Co-Conservators' Motion to Dismiss, held that UREI was fee simple owner of the property, and required the Co-Conservators and WCA present evidence of the amounts of their claims for excess proceeds from the sale to satisfy their outstanding judgments against Ms. Freeman.

The parties raise numerous issues for our review.[1] The threshold issue is whether the statute governing this redemption was the one in effect at the time of the tax sale in

---

[1] REO raised the following issues:

1. [Whether] REO Holdings was an eligible party to redeem the property.
2. [Whether] [t]he trial court committed error when, after REO complied with this Court's standing ORDER regarding redemptions, the Court sua spont[e] refused to follow its own standing ORDER.
3. [Whether] [t]he creditors []ever had standing to challenge REO's Redemption.
4. [Whether] [t]he trial court erred by withdrawing an automatic Order of Reference after the case was heard by the Clerk and Master based solely on allegations by the law firm of Thompson Burton PLLC that Charles Walker (counsel for REO) had forged Freeman's signature on the Quitclaim Deed used for the redemption.
5. [Whether] [t]he trial court erred by allowing a quitclaim deed to be attacked despite the Grantor confirming she executed the deed and that was in-fact her signature.

UREI, the Co-Conservators, and WCA phrase the issues on appeal as follows:

1. Whether the 2014 version of TENN. CODE ANN. § 67-5-2701 controlled the redemption?
2. Whether Appellant REO Holdings, LLC was an eligible party to redeem the property sold at tax sale under the 2014 version of TENN. CODE ANN. § 67-5-2701?
3. Whether the trial court correctly ruled that REO Holdings, LLC failed to comply with the mandatory procedural filing requirements of TENN. CODE ANN. § 67-5-2701(b) (2014)?
4. Whether the trial court correctly ruled that REO Holdings, LLC failed to comply with the mandatory requirement to timely pay the "entire amount owning" of TENN. CODE ANN. § 67-5-2701(b) (2014)?
5. Whether the trial court correctly ruled that Davidson County Chancery Court orders cannot supersede statute or abrogate the requirements of TENN. CODE ANN. § 67-5-2701 (2014)?

August 2013 or the one in effect when REO initiated the redemption in September 2014. This is an issue of law, which we review de novo with no presumption of correctness. *Rutherford Cty. v. Delinquent Taxpayers of Rutherford Cty.*, No. M2016-01254-COA-R3-CV, 2017 WL 5495401, at *2 (Tenn. Ct. App. Nov. 15, 2017) (citing *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009)).

## II. ANALYSIS

### A. Which Version of the Law Applies

The trial court held that the 2014 law applied, stating:

> The General Assembly changed the redemption statute effective July 1, 2014. 2014 Tenn. Pub. Acts Ch. 883 (S.B. 2128). Section 20 of that Act provides that "[t]his act shall take effect on July 1, 2014, the public welfare requiring it." REO Holdings did not obtain its purported interest in the Property through the Quitclaim Deed until August 29, 2014, after the effective date of the new statute. Basic tenets of statutory construction require this Court to give the effective-date language in the new statute its plain meaning. *See Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 803 (Tenn. 2000). The statute that was in effect on the date of the attempted redemption of the Property on September 2, 2014, was Tenn. Code Ann. section 67-5-2701 (2014); therefore, Tenn. Code Ann. section 67-5-2701 (2014) governed REO Holdings' attempted redemption.

While the court correctly stated the law generally applicable to statutory construction, its ruling in this case failed to acknowledge the uniqueness of the right of redemption. This right is statutory and "can only be claimed in the cases and under the circumstances prescribed." *Madison Cty. v. Delinquent Taxpayers for 2012*, No. W2016-02526-COA-R3-CV, 2018 WL 1976042, at *2 (Tenn. Ct. App. Apr. 26, 2018), *perm. app. filed* June 26, 2018 (quoting *Keely v. Sanders*, 99 U.S. 441, 446 (1878)). "A tax sale must be tested by the tax law in existence at the time of the sale, and, if the deed executed under such sale was valid under the law then in existence, the deed could not be affected by any subsequent legislation." *Sheafer v. Mitchell*, 71 S.W. 86, 94 (Tenn. 1902) (citing *Tracy v. Reed (C.C.)*, 38 Fed. 69, [75 (C.C.D. Or. 1889),] 2 L. R. A. 778; *Richardson v. Marshall Co.*, 100 Tenn. 352, 45 S.W. 440 [(Tenn. 1898)]; *Douglass v. Pike Co.*, 101 U.S. 677, 25 L. Ed. 968 [(1879)]; *Taylor v. Ypsilanti*, 105 U.S. 60, 26 L. Ed. 1008 [(1881)]); *see also Rutherford Cty. v. Delinquent Taxpayers of Rutherford Cty.*, 2017 WL

---

6. Whether Appellees Woodhaven Condominium Association, Inc. and the Co-Conservators of Sepal I. Mooneyham, Dr. Gary L. Mueller, MD, and Dr. Carolyn R. Mueller, Ph.D., RN, have standing to oppose the redemption?

5495401, at *4 n.2 (applying "the version of the statute in effect at the time the trial court entered the decree confirming the sale was entered" though "it ha[d] since been amended.")

The right of redemption and the procedure by which it is exercised are created by statute and originate on the date of the tax sale; consistent with the foregoing authority, we conclude that the law in effect at the time of the tax sale governs the entire proceedings in this case.[2]

## B.    Whether REO Was a Party Entitled to Redeem

On August 13, 2013, when the tax sale was conducted, Tennessee Code Annotated section 67-5-2701 read as follows:

(a) For purposes of this part, "person entitled to redeem property" includes any person who owns a legal or equitable interest in the property sold at the tax sale and creditors of the taxpayer having a lien on the property; provided, that, once property has been redeemed by the taxpayer, no further redemptions under this part are permissible. The taxpayer may redeem the property regardless of whether any other person has previously redeemed the property during the one-year redemption period.

In accordance with this statute, REO was "entitled to redeem" the property because it purchased a legal interest in the property, i.e., the right to redeem, from Ms. Freeman; REO then exercised the right of redemption within the one-year period set forth at section 67-5-2702 (2013).

For the foregoing reason, we affirm the trial court's conclusion that REO was entitled to redeem the property.

## C.    Whether REO's Attempted Redemption Fails

As it read on August 13, 2013, Tennessee Code Annotated section 67-5-2702 set forth the following procedure REO was required to follow in order to exercise the right of redemption:

(a) Persons entitled to redeem property may do so by paying the moneys to the clerk as required by § 67-5-2703 within one (1) year from the date of entry of the order of confirmation of sale, as evidenced by the records in the office of the clerk of the court responsible for the sale.

---

[2] Our holding in this regard disposes of any concern raised as to the retroactive application of the 2014 statutory enactments.

(b) A taxpayer may redeem property that has been previously redeemed by paying to the clerk the moneys as required by § 67-5-2703 within one (1) year from the date the property was sold, as evidenced by entry of the order of confirmation of sale. Upon the entry of the order of redemption using the procedure outlined in § 67-5-2704, the clerk shall disburse the moneys paid to redeem, plus interest at a rate of ten percent (10%) per annum computed from the date of the order of the previous redemption to the person previously redeeming as ordered by the court.

On August 13, 2013, section 67-5-2703 set forth the method of calculating the amount necessary to redeem the property read:

> In order to redeem property that has been sold, any person entitled to redeem the property shall pay to the clerk of the court who sold the property the amount paid for the delinquent taxes, interest and penalties, court costs and any court ordered charges, and interest at the rate of ten percent (10%) per annum computed from the date of the sale on the entire purchase price paid at the tax sale.

On August 13, 2013, section 67-5-2704 set forth the process to be followed (or disregarded in favor of an alternate procedure, if desired by the trial court) after the redeeming party begins the redemption process under sections 2702 and 2703:

> (a) Within ten (10) days of receipt of the money required for redemption as set forth in § 67-5-2703 and, if required, the statement setting forth the basis under which a person is entitled to redeem the property, the clerk shall send a notice to the purchaser of the property at the tax sale. This notice shall state that money to redeem the property has been tendered, the date of the tender, and that the purchaser shall have thirty (30) days from the date of the tender to file a motion requesting additional amounts to be paid to compensate the purchaser for any other lawful charges or moneys, including property taxes due or delinquent on the property, expended to preserve the value of the property or to otherwise protest the redemption. If the court finds that the purchaser has paid additional moneys, including property taxes due or delinquent on the property, for lawful charges in order to preserve the value of the property, the court shall order the person requesting to redeem the property to pay such additional sums to the clerk of court. "Lawful charges" as used in this subsection (a) include, but are not limited to, reasonable payments made for maintenance and insurance. In addition, the court shall direct the person entitled to redeem to pay a reasonable fee to the clerk and master or delinquent tax attorney for the preparation of

7

the notices, motions, and orders required to give effect to the request to redeem the property. After any additional sums have been paid to the clerk, the court shall order that the redemption has been properly made, and the clerk shall disburse the purchase price with interest at a rate of ten percent (10%) per annum computed from the date of the tax sale to the purchaser. If the court finds that no additional sums are owing in order to redeem, or upon expiration of the thirty-day period for the purchaser to file a motion to protest the redemption or to request additional moneys, the court shall order that redemption has been properly made, and the clerk shall disburse the purchase price, plus interest at a rate of ten percent (10%) per annum computed from the date of the sale, and any other moneys so ordered by the court to the purchaser.

(b)      In lieu of the motion procedure outlined in subsection (a), the court may by rule or court order establish an alternative procedure.

Tenn. Code Ann. § 67-5-2704 (2013).

There is nothing in the record before us to indicate that REO failed to follow the redemption procedure as set forth above or as adopted by the Davidson County Chancery Court pursuant to subsection (b). Indeed, UREI represented to the court in the objection it filed to REO's redemption that the amount "that was actually paid . . . appears to have been calculated based on the former statutory scheme." Accordingly, we reverse the judgment of the trial court holding that the redemption failed due to REO's noncompliance with the 2014 statutory scheme. We remand the cause for consideration of UREI's claim for reimbursement.[3]

### D.      Lienholders' Standing

REO argues that, as creditors, the Co-Conservators and WCA do not have standing to challenge REO's redemption of the property because they did not attempt to redeem the property themselves. REO's argument in this regard is unavailing, as it ignores the entire procedure in the statutes at the time of the tax sale. Both creditors have articulated facts that establish their entitlement to have a court adjudicate the matter of their liens on the property at issue.[4] While the tax sale extinguished their liens on the

---

[3] Though UREI's claim for reimbursement was made pursuant to Tennessee Code Annotated section 67-5-2701(d), (e), and (j) (2014), on remand, the claim should be construed as the "motion requesting additional amounts to be paid to compensate the purchaser for any other lawful charges or moneys," as contemplated in the law in effect at the time of the tax sale, specifically section 67-5-2704 (2013).

[4] To establish standing, a party must show three things: "a distinct and palpable injury"; "a causal connection between the claimed injury and the challenged conduct"; and, "that the alleged injury is

8

property,[5] the law in effect at the time of the tax sale in this case provided a means by which creditors could file a motion establishing their claim to excess sale proceeds. *See* Tenn. Code Ann. § 67-5-2707 (2013). The record makes clear that the Co-Conservators and WCA were interested parties, as defined by Tennessee Code Annotated section 67-5-2701(a) (2013), and that each filed a motion "setting forth a claim to any excess sale proceeds," as required by section 67-5-2707 (2013).[6] Consequently, on remand, the trial court is to also consider the motions filed by the Co-Conservators and WCA and determine whether they have established a claim to the proceeds, and if so, the amount of excess proceeds, if there are any, to which each is entitled.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's holding that REO was entitled to redeem the property. We reverse the trial court's holding that the 2014 version of the redemption statutes applied to the tax sale at issue and that REO's redemption failed for its noncompliance with the 2014 statutory requirements. We remand the matter

---

capable of being redressed by a favorable decision of the court." *Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006).

[5] *See* Tenn. Code Ann. § 67-5-2504(b); *Metro. Gov't of Nashville v. Brown,* No. M2008-02495-COA-R3-CV, 2009 WL 5178418 at *5 (Tenn. Ct. App. Dec. 30, 2009); *Vanderbilt Mortgage & Fin., Inc. v. Vandergriff,* No. E2015-01121-COA-R3-CV, 2016 WL 3453938, at *6-7 (Tenn. Ct. App. June 17, 2016)

[6] Tennessee Code Annotated section 67-5-2707 (2013) states, "(a) Following entry of the order of confirmation of sale, any "person entitled to redeem property," as defined in § 67-5-2701(a), may file a motion with the court setting forth a claim to any excess sale proceeds." Subsection (c) sets forth the procedure and order of priority for parties that establish a claim to any excess proceeds:

> (c) At the hearing, the court shall order that any remaining redemption period shall be terminated as to the movant and as to any other person entitled to redeem property who consents to such termination as evidenced by their signature on such order, and any excess proceeds be paid according to the following priorities to each party that establishes its claim to the proceeds:
> > (1) To the tax entity or entities prosecuting the delinquent tax sale, for any remaining or subsequent outstanding taxes that are a lien against the property;
> > (2) To any lienholder, private or public, holding a claim against the property at the time of the tax sale, for the amount proven to be due under such lien, in accordance with priorities established by applicable law;
> > (3) To any lienholder, private or public, holding a claim against the property arising after the tax sale, for the amount proven to be due under such lien, in accordance with priorities established by applicable law; . . .

§ 67-5-2707(c) (2013).

to the trial court for consideration of UREI's claim for reimbursement and of the Co-Conservators and WCA's motions for excess proceeds, applying the version of Tennessee Code Annotated section 67-5-2701 *et. seq.* that was in effect as of the date of the tax sale.

_____
RICHARD H. DINKINS, JUDGE